**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MICHELE WALLACE and VANESSA GALLUCCI, *individually and on behalf of all others similarly situated*, | CASE NO.: 2:21-cv-09980 |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| GERBER PRODUCTS COMPANY, | |
| Defendants. | |

**CLASS ACTION COMPLAINT**

Plaintiffs Michele Wallace and Vanessa Gallucci on behalf of themselves and all others similarly situated, by their undersigned attorneys, allege against Gerber Products Company (d/b/a Nestlé Nutrition, Nestlé Infant Nutrition, or Nestlé Nutrition North America) ("Gerber" or "Defendant"), the following based upon personal knowledge as to themselves and their own actions, and, as to all other matters, investigation of their counsel, as follows:

**INTRODUCTION**

1.Inorganic arsenic, lead, cadmium and mercury are toxic heavy metals. The Food and Drug Administration and the World Health Organization have declared them dangerous to human health, particularly to babies and children, who are most vulnerable to their neurotoxic effects.[1] Even low levels of exposure can cause serious and often irreversible damage to brain development.[2]

---

[1] *Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury,* Staff Report ("**House Subcommittee Report**" or "**SR**"), Subcommittee on Economic and Consumer Policy of the Committee on Oversight and Reform, U.S. House of Representatives, at 11, February 4, 2021, available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf (internal citations omitted).
[2] *Id.*

2.      Yet, according to internal company documents of Defendant, and test results provided to the Congressional Subcommittee charged with investigating toxic metals in baby foods, commercial baby foods are tainted with significant levels of toxic heavy metals, including arsenic, lead, cadmium, and mercury. Exposure to toxic heavy metals causes permanent decreases in IQ, diminished future economic productivity, and increased risk of future criminal and antisocial behavior in children. Toxic heavy metals endanger infant neurological development and long-term brain function.

3.      Yet, tests of Defendant's products reveal that they contain inappropriate and harmful levels of toxic heavy metals.

4.      This is a consumer class action brought individually by the Plaintiffs and on behalf of all persons in the below-defined proposed Classes, all of whom purchased one or more of certain baby foods manufactured by Defendant Gerber.[3]  The term "Products" or "Baby Food Products" used herein refers to the products and/or ingredients as defined in footnote 3, below describing the products and/or ingredients that are at issue in this action and are collectively referred herein as "the Products".

5.      The Defendant manufactures, markets, advertises, labels, distributes, and sells its Gerber Baby Food Products throughout the United States, including in this District.

---

[3] The Gerber products at issue are: Gerber Toddler Mashed Potatoes & Gravy with Roasted Chicken Meal, Gerber Toddler Pick-ups Chicken & Carrot Ravioli Meal, Gerber Toddler Spaghetti Rings in Meat Sauce Meal, Gerber Toddler Spiral Pasta in Turkey,  Meat Sauce Meal, Gerber Toddler Pick-ups Chicken & Carrot Ravioli Meal, Gerber Toddler Spaghetti Rings in Meat Sauce Meal, Gerber Sitter 2nd Foods Turkey Rice Dinner Plastic Tub, Gerber Sitter 2nd Foods Vegetable Beef Dinner Plastic Tub, Gerber Sitter 2nd Foods Apple Chicken Dinner Plastic Tub, Gerber Sitter 2nd Foods Vegetable Beef Dinner Plastic Tub, Gerber Toddler Mashed Potatoes & Gravy with Roasted Chicken Meal, Gerber Toddler Pick-ups Chicken & Carrot Ravioli Meal, Gerber Toddler Spaghetti Rings in Meat Sauce Meal, Gerber Toddler Spiral Pasta in Turkey Meat Sauce Meal, and Gerber Sitter 2nd Foods Turkey Rice Dinner Plastic Tub, Gerber Organic Oatmeal Banana Cereal, Gerber Single Rice Grain Cereal, Gerber Puffs Banana (the "Food Products").

6.      The Defendant does not list heavy metals as an ingredient on its products' labels nor does Gerber warn of the potential presence of heavy metals in the Products.

7.      Unbeknownst to Plaintiffs and members of the Classes, and contrary to the representations on its Product labels, Gerber's Baby Food Products contain heavy metals, including inorganic arsenic, cadmium and lead at levels well above what is considered safe amounts for babies to ingest, which, if disclosed to Plaintiffs and members of the Class prior to purchase, would have caused Plaintiffs and members of the Class to not purchase, consume, or use as food for their babies, these Baby Food Products.

8.      As a result, Defendant's labeling is deceptive and misleading.

9.      Plaintiffs and the Class, as defined below, assert claims for consumer fraud, breach of warranty, unjust enrichment, and seek damages, injunctive and declaratory relief, interest, costs, and attorneys' fees.

## THE PARTIES

**The Plaintiffs**

10.     Plaintiff Michele Wallace is, and at all relevant times was, a citizen of the State of New Jersey residing in Rahway, New Jersey and is a member of the Class defined herein. Since around May 2020 through the present, Plaintiff Wallace continuously purchased products manufactured by Gerber containing heavy metals from Target, Walmart and Shoprite for her infant child. The following products are some, but not all, of the products Plaintiff Wallace purchased that contain heavy metals: Gerber Organics variety of fruit and vegetable packs; During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements and other marketing by Defendant, Plaintiff Wallace was unaware that Gerber's Baby Food Products contained any level of heavy metals, and would not have purchased the food if that was fully disclosed, or she would not have paid as much for these products if that

information was fully disclosed. Plaintiff Wallace was injured by paying a premium for Defendant's contaminated products that have no or de minimis value— or whose value was at least less than what she paid for these products— based on the presence of the alleged heavy metals.

11.    Plaintiff Vanessa Gallucci is, and at all relevant times was, a citizen of the State of New York residing in Central Islip, New York and is a member of the Class defined herein. Since around May 2020 through the present, Plaintiff Gallucci continuously purchased products manufactured by Gerber containing heavy metals from Target for her infant child. The following products are some, but not all, of the products Plaintiff Gallucci's purchased that contain heavy metals:  Gerber Rice Single grain cereal, Gerber Organic Oatmeal Banana Cereal, Gerber Puffs Banana, Gerber (2 pack sitter 2nd foods) flavors-Carrots and almost all the other flavors. During that time, based on Defendant Gerber's omissions and the false and misleading claims, warranties, representations, advertisements and other marketing by Defendant, Plaintiff Gallucci was unaware that Gerber's Baby Food Products contained any level of heavy metals, and would not have purchased the food if that was fully disclosed, or she would not have paid as much for the Products if that information was fully disclosed. Plaintiff Gallucci was injured by paying a premium for these products that have no or de minimis value— or whose value was at least less than what she paid for these products— based on the presence of the alleged heavy metals.

12.    Defendant Gerber is a subsidiary of Swiss food giant Nestlé S.A., incorporated in Delaware with its principal place of business at 1812 North Moore Street, Arlington, VA 22209. Nestlé produces and distributes nutritious food and beverage products. Their products include: frozen pizza coffee, canned milk, ice cream, baking goods and frozen prepared meals and snacks, etc.  Nestlé maintains its U.S. operations in many U.S. locations through seven operating

companies: Nestlé USA, Nestlé Waters North America, Nestlé Purina, Gerber, Nestlé Health Science, Nestlé Professional, and Nespresso. Gerber, or Gerber Products Company/Nestlé Infant Nutrition, produces multiple lines of food and beverages for babies and infants, including formula, supplements, cereal, baby food, snacks, drinks, meals, and organic food. Gerber baby food products can be purchased from the Gerber website (gerber.com) and supermarket stores.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005 (hereinafter referred to as "CAFA") codified as 28 U.S.C. § 1332(d)(2) because the claims of the proposed Class Members involves more than 100 individuals and the amounts in controversy exceeds $5,000,000 and because Defendant is a citizen of a different state than most Class Members.

14.     This Court has personal jurisdiction over Defendant because Defendant regularly sells and markets the products and conduct business in this District and/or under the stream of commerce doctrine by allowing the products to be sold in this District. In addition, Plaintiff Wallace at all relevant times Was a citizen of New Jersey and purchased Defendant's Products complained of herein in New Jersey.

15.     Venue is proper in this Court because a substantial portion of the events complained of took place in this District and this Court has jurisdiction over the Defendant.

## FACTUAL ALLEGATIONS

16.     The market for baby foods is exceedingly large and growing.  The baby foods market worldwide is projected to grow by $22.7 billion by the year 2025.[4]

---

[4]https://www.researchandmarkets.com/reports/338658/baby_foods_and_infant_formula_global_market?utm_source=dynamic&utm_medium=BW&utm_code=b559sk&utm_campaign=1386712+-+Global+Baby+Foods+and+Infant+Formula+Market+Assessment+2020-2025&utm_exec=joca220bwd.

17.    Along with the exploding baby food market is a surge in popularity of baby food products that are organic and otherwise "healthy" for babies.[5]

18.    Defendant manufactures, markets, advertises labels, distributes, and sells the Products at issue in the litigation, both in the past and currently. Defendant has advertised and continues to advertise the Products through television commercials, print advertisements, point-of-sale displays, product packaging, Internet advertisements, and other promotional materials.

**Defendant Gerber**

20.    Defendant Gerber develops, formulates, manufactures, markets, advertises, represents and warrants its baby food Products throughout the United States.  Gerber claims on its website that "We have among the strictest standards in the world.  From farm to highchair, we go through over 100 quality checks for every jar."[6] It claims that "our farmers are using best in class practices to ensure quality ingredients and minimize the presence of any unwanted heavy metals."[7] It promises that "Gerber takes many steps to keep levels as low as possible"[8] and "[i]f foods don't pass our quality and safety checks, we don't sell them."[9]  It emphasizes, "the truth is you would do anything for your baby, and so would we."

21.    Gerber redoubles these promises by telling parents concerned about recent reports about tainted Gerber baby food, "Gerber baby foods are absolutely safe and healthy for your baby."[10]

22.    Gerber's packaging labels do not list, let alone warn, potential customers that the Gerber Baby Food Products contain toxic heavy metals.

**Heavy Metals Found in Defendant's Baby Food Products**

---

[5] *Id*.
[6] https://www.gerber.com/commitment-to-quality
[7] https://www.gerber.com/learning-center/quality-safety-faqs
[8] https://www.gerber.com/learning-center/quality-safety-faqs
[9] https://www.gerber.com/learning-center/quality-safety-faqs
[10] https://www.gerber.com/learning-center/quality-safety-faqs

23.     Arsenic, lead, cadmium and mercury have been linked to cancer, chronic disease, and neurotoxic effects and are listed in the World Health Organization's top 10 chemicals of concern for infants and children.[11]  They rank in the top ten in the Center for Disease Control's Agency for Toxic Substances and Disease Registry (ATSDR) Substance Priority List.[12]   The ATSDR lists substances that "based on a combination of their frequency, toxicity, and potential for human exposure" pose significant threat to human health.[13]

24.     Arsenic is ranked at the top of the ATSDR.  "There is some evidence that exposure to arsenic in early life (including gestation and early childhood) may increase mortality in young adults."[14]

25.     The FDA has set the maximum allowable level of inorganic arsenic for human consumption in bottled water at 10 parts per billion ("ppb").

26.     With regard to baby food, the FDA has finalized only one metal standard for one narrow category of baby food, a 100 ppb inorganic arsenic standard for infant rice cereal.

27.     Lead ranks second on the ATSDR list.[15]  The American Academy of Pediatrics and the Centers for Disease Control and Prevention state that there is no safe level of lead in children.[16]

28.     Lead is associated with behavioral problems, decreased cognitive performance, delayed puberty, reduced postnatal growth, and is "especially dangerous to infants and young children."

29.     Cadmium is seventh on the ATSDR list,[17] and is associated with decreased IQ and Attention-Deficit/Hyperactivity Disorder (ADHD).[18]

30.     The FDA and EPA limit cadmium to 5 ppb in bottled water and drinking water,

---

[11] https://www.who.int/ceh/capacity/heavy_metals.pdf
[12] https://www.atsdr.cdc.gov/spl/index.html
[13] https://www.atsdr.cdc.gov/spl/index.html
[14] https://www.atsdr.cdc.gov/PHS/PHS.asp?id=18&tid=3#bookmark01
[15] https://www.atsdr.cdc.gov/spl/index.html
[16] https://www.ewg.org/release/congressional-investigation-popular-baby-foods-contain-high-levels-arsenic-lead-cadmium-and-
[17] https://www.atsdr.cdc.gov/spl/index.html
[18] SR p. 12.

respectively, while the WHO limits it to 3 ppb in drinking water.[19]

31.     Mercury is third on the ATSDR list.[20]   Among other concerns, "higher blood mercury levels at 2 and 3 years of age were positively associated with autistic behaviors among preschool-age children."[21]

32.     The EPA limits mercury to 2 ppb in drinking water.[22]

33.     The House Subcommittee Report concluded that its "investigation proves that commercial baby foods contain dangerous levels of arsenic, lead, mercury, and cadmium" and that "[m]anufacturers knowingly sell these products to unsuspecting parents, in spite of internal company standards and test results, and without any warning labeling whatsoever."[23]

34.     It found that "naturally occurring toxic heavy metal may not be the only problem causing dangerous levels of toxic heavy metals in baby foods; rather, baby food producers . . . are adding ingredients that have high levels of toxic heavy metals into their products, such as vitamin/mineral pre-mix."[24]

35.     Defendant Gerber only tested their baby food periodically, possibly resulting in an undercount of toxic metals in the finished baby food product.[25]

36.     The Subcommittee's investigation revealed the following with respect to Defendant Gerber:

  i.   Gerber routinely used rice flour that had over 90 ppb inorganic arsenic.[26]

  ii.  Gerber "demonstrated its willingness to use ingredients that contained dangerous lead levels."[27]

  iii. Gerber does not test all its ingredients for cadmium, but of those that it tests, it

---

[19] SR p. 28.
[20] https://www.atsdr.cdc.gov/spl/index.html
[21] SR p. 13 (internal citation omitted).
[22] SR p. 32.
[23] SR p. 59.
[24] SR p. 56.
[25] SR pp. 55-56.
[26] SR p. 19.
[27] SR p. 27.

accepts high levels of cadmium, e.g., 75% of carrots Gerber contained had more cadmium than permitted by the EPA in drinking water.[28]

### Plaintiffs Relied Upon the Baby Food Products' Label to Purchase the Products

37.    Plaintiffs were victims of Defendant's mislabeling of the (i) Gerber Brand Baby Food.

38.     Prior to each purchase of the Products, Plaintiffs viewed the labels on Defendant's Baby Food Products. Each time, Plaintiffs reasonably relied upon the labels on Defendant's Products before purchasing them. In particular, Plaintiffs purchased the Defendant's Products believing they would provide their children with healthy organic baby food, as claimed on the label and packaging of the Defendant's Products.

39.    Defendant's labeling claims were a material factor in Plaintiffs' decision to purchase Defendant's Baby Food Products.

40.    At the point of sale, Plaintiffs did not know, and had no reason to know, that Gerber's Baby Food Products were mislabeled as set forth herein.

41.    At the point of sale, Plaintiffs did not know, and had no reason to know, that Defendants' nutrient content claims on the Baby Food Products' labels were false, deceitful, and untrue as set forth herein.

42.    Plaintiffs later learned that Gerber's Baby Food Products contained unsafe levels of heavy metals and inorganic arsenic.  Plaintiffs were deceived as a result of Defendant's false and misleading marketing practices.  Plaintiffs believed they were buying products that were providing their children with healthy organic baby food.

---

[28] SR p. 32.

43.    Plaintiffs would not have purchased or paid a price premium for the Defendant's Products had they known the Products contained the quantity or levels of heavy metals and inorganic arsenic that were included in the Product.

44.    Plaintiffs are in the same Class as all other consumers who purchased Defendant's Baby Food Products during the relevant time period.  Plaintiffs and the Class Members were in fact misled by Defendants' misrepresentations in respect to the Products.  Plaintiffs and Class Members would have purchased other foods for their children if they had not been deceived by the misleading and deceptive labeling of Gerber's Baby Food Products sold by Defendants.

**CLASS ACTION ALLEGATIONS**

45.    Plaintiffs bring this action individually and on behalf of all other persons similarly situated pursuant to Federal Rule of Civil Procedure 23. The class definition(s) may depend on the information obtained throughout discovery. At this time, Plaintiffs bring this action and seek certification of the following Class:  All persons within the United States who purchased Gerber's Baby Food Products from the beginning of any applicable limitations period through the date of class certification (the "National Class" or the "Class").

46.    Plaintiff Wallace (the "New Jersey Plaintiff") seek certification of the following subclass (the "New Jersey Sub-Class"): All persons in the State of New Jersey who purchased Gerber's Baby Food Products from the beginning of any applicable limitations period through the date of class certification.

47.    Plaintiff Gallucci (the "New York Plaintiff") seeks certification of the following subclass (the "New York Sub-Class"): All persons in the State of New York who purchased Gerber's Baby Food Products from the beginning of any applicable limitations period through the date of class certification.

48.     Excluded from the Classes are the Defendant, and any entities in which the Defendant has a controlling interest, the Defendant's agents, employees and their legal representatives, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, and Plaintiffs' counsel, their staff members, and their immediate family.

49.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

50.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Classes number in the thousands to tens of thousands. The number of members in the Classes is presently unknown to Plaintiffs but may be verified by Defendant's records. Members of the Classes may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

51.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all members of the Classes and predominate over questions affecting only individual members of the Classes. Such common questions of law or fact include, but are not limited to, the following:

      a.  Whether Gerber's Baby Food Products contain dangerous levels of heavy metals;

      b.  Whether Gerber's Baby Food Products claimed to be "organic" are "organic";

      c.  Whether the marketing, advertising, packaging, labeling, and other promotional materials for Gerber's Baby Food Products are deceptive;

11

d.  Whether Defendant's actions violate the state consumer fraud statutes invoked below;

e.  Whether Defendant's actions constitute common law fraud;

f.  Whether Plaintiffs and Members of the Classes were damaged by Defendant's conduct;

g.  Whether Defendant was unjustly enriched at the expense of Plaintiffs and Class Members; and

h.  Whether Plaintiffs and Class Members are entitled to injunctive relief.

52.     **Typicality – Federal Rule of Civil Procedure 23(a)(3).** The claims of the named Plaintiffs are typical of the claims of other Members of the Classes. All Members of the Classes were comparably injured by Defendant's conduct described above, and there are no defenses available to Defendant that are unique to Plaintiffs or any particular Class members.

53.     **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of other Class Members; they have retained class counsel competent to prosecute class actions and financially able to represent the Classes.

54.     **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and the other Class Members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class Members as a whole. In particular, Plaintiffs seek to certify a Class to enjoin Defendants from selling or otherwise distributing the Products until such time that Defendants can demonstrate to the Court's satisfaction that the Products are accurately labeled.

55.    **Superiority – Federal Rule of Civil Procedure 23(b)(3).**  A class action is superior to any other means of adjudication for this controversy. It would be impracticable for members of the Classes to individually litigate their own claims against Defendant because the damages suffered by Plaintiffs and the members of the Classes are relatively small compared to the cost of individually litigating their claims. Individual litigation would create the potential for inconsistent judgments and delay and expenses to the court system. A class action provides an efficient means for adjudication with fewer management difficulties and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT 1
### VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT
### N.J. Stat. Ann. §§ 56:8-1, *et seq.*
### (*On Behalf of the New Jersey Class Against All of the Defendants*)

56.    The New Jersey Plaintiff identified above, individually and on behalf of the New Jersey Class, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

57.    Plaintiff brings this claim on behalf of herself and the New Jersey Class for violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann §§ 56:8-1, *et seq.*

58.    Defendant is a "person," as defined by N.J. Stat. Ann. § 56:8-1(d).

59.    Defendant sells "merchandise," as defined by N.J. Stat. Ann. § 56:8-1(c) and (e).

60.    The New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1, *et seq.*, prohibits unconscionable commercial practices, deception, fraud, false pretense, false promise, misrepresentation, as well as the knowing concealment, suppression, or omission of any material fact with the intent that others rely on the concealment, omission, or fact, in connection with the sale or advertisement of any merchandise.

61.    As described herein, Defendant repeatedly advertised on the labels of Gerber's Baby Food Products on its respective website, and through a national advertising campaign, among other items, that Defendant's Products were and are safe, healthy and fit for consumption by infants and children.

62.    Contrary to these representations, Gerber's Baby Food Products contain levels and quantities of arsenic, lead, cadmium and mercury that would be material to a reasonable consumer, and do not contain the safe and healthy food and beverages described on the Defendant's Product labels or in Defendant's uniform marketing and advertising campaigns. Rather, Gerber Baby Food Products contain toxic and/or dangerous levels of heavy metals, which have been known to cause adverse health implications to babies and infants, rendering the Defendant's Products, unsafe and unsuitable for consumer use as marketed by Defendant.

63.    Defendant maintained exclusive knowledge of material facts concerning the material information that the Gerber's Baby Food Products contained a quantity and level of toxic heavy metals which would be material to the reasonable consumer, and which had the propensity to cause adverse health implications.

64.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

65.    As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff and New Jersey Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Gerber's Baby Food Products.

66.     Plaintiff and New Jersey Class members seek all monetary and non-monetary relief allowed by law, including injunctive relief, other equitable relief, actual damages, treble damages, restitution, and attorneys' fees, filing fees, and costs.

### COUNT 2
### VIOLATIONS OF THE NEW YORK DECEPTIVE TRADE PRACTICES ACT
### New York Gen. Bus. Law § 349, *et seq.*
### (*On behalf of the New York Class Against Defendant Gerber*)

67.     The New York Plaintiff identified above, individually and on behalf of the New York Class, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

68. Plaintiff brings this claim on behalf of herself and the New York Class.

69.     The New York Deceptive Acts and Practices Act makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349.

70.     Defendant engaged in deceptive acts or practices in the conduct of its business, trade, and commerce or furnishing of services, in violation of N.Y. Gen. Bus. Law § 349, as described herein.

71.     Defendant's foregoing acts and practices, including its omissions, were directed at consumers.

72.     Defendant's representations and omissions were material, in part, because they concerned an essential part of its Brand Baby Food's ingredients and essential qualities, and also because they were likely to deceive reasonable consumers.

73.     Defendant's foregoing deceptive acts and practices, including their omissions, were and are deceptive acts or practices in violation of New York's General Business Law section 349, Deceptive Acts and Practices, N.Y. Gen. Bus. Law 349, et. seq., in that:

      a.     Defendant designed, formulated, manufactured, labeled, packaged, marketed, advertised, distributed and sold its Baby Food Products when it knew, or should

have known, that these products contained quantities and levels of toxic heavy metals which would be material to the reasonable consumer, and which have been documented as having the propensity to cause adverse health implications to babies and infants, rendering the Baby Food Products unsuitable for consumer use as marketed by Defendant.

b.  Defendant knew or should have known that its Baby Food Products contained and contain levels and quantities of toxic heavy metals, such as arsenic, lead, cadmium and mercury, which would be material to the reasonable consumer but, as a result of Defendant's mislabeling and omissions was unknown to and would not easily be discovered by Plaintiff and Class Members.

74.  Defendant's efforts to conceal and downplay the real health and safety concern of heavy metals in its Baby Food Products have resulted in harmful consumer fraud and deception upon attack on unwitting and unknowledgeable consumers.

75.  Plaintiff and New York Class members suffered damages when they purchased Gerber's Baby Food Products. Defendant's unconscionable, deceptive and/or unfair practices caused actual damages to Plaintiff and New York Class members.

76.  Defendant's foregoing deceptive acts and practices, including its omissions, were likely to deceive, and did deceive, consumers acting reasonably under the circumstances.

77.  Plaintiff reserves the right to allege other violations of the law, which constitute other unlawful business acts and practices. As alleged herein, Defendant continues to misrepresent the Products' safety and continues to deny that its Baby Food Products contain unsafe levels of heavy metals which have the propensity to cause adverse health implications. Further, Defendant

has not recalled its products nor provided any remedial efforts, including a warning disclosing their risks, and Defendant's conduct is ongoing and continues to this date.

78.    Defendant recklessly disregarded the Plaintiff and New York Class members' rights. Defendant's knowledge of the Products' presence of quantities and levels of heavy metals, which would pose to a reasonable consumer health and safety risks, put it on notice that its Baby Food Products was not sold as represented.

79.    In accordance with subsection (h) of section 349, Plaintiff seeks an order enjoining Defendant from continuing these unlawful deceptive acts and practices and material omissions. Absent enjoining these unlawful deceptive acts and practices, Defendant will continue its false and misleading marketing of the Brand Baby Food Products and, in doing so, irreparably harm each of the New York Class Members.

80.    As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff and the New York Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the harmful Gerber Baby Food Products.

81.    By reason of the foregoing, Plaintiff and the New York Class Members also seek actual damages or statutory damages of $50 per violation, whichever is greater, as well as punitive damages. N.Y. Gen. Bus. Law § 349(h).

**COUNT 3**
**VIOLATION OF NEW YORK DECEPTIVE SALES PRACTIVES ACT**
**New York Gen. Bus. Law § 350, *et seq.***
**(*On Behalf of the New York Class Against Defendant Gerber*)**

82.    The New York Plaintiff identified above, individually and on behalf of the New York Class, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein,

including those alleged in the Second Count for Defendant's Violation of N.Y. Gen. Bus. Law 349, *et seq.*

83.    Plaintiff brings this cause of action on behalf of herself and the New York Class against Defendant for violation of New York General Business Law section 350.

84.    Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. Gen. Bus. Law § 350.

85.    New York General Business Law section 350-a defines "false advertising" as "advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect." N.Y. Gen. Bus. Law § 350-a. The section also provides that advertising can be false by omission, as it further defines "false advertising" to include "advertising [that] fails to reveal facts material in the light of such representations with respect to the commodity . . . to which the advertising relates." Id.

86.    Defendant's labeling, marketing, and advertising of the Gerber Brand Baby Food Products, as alleged herein, are "misleading in a material respect," and are thus "false advertising." As more fully set forth above, Defendant repeatedly advertised, both on the labels for Gerber's Baby Food Product labels and on its website and through a national advertising campaign, among other items, that Gerber's Baby Food Products were and are safe, healthy, and fit for the consumption of infants and children.

87.    These label and advertising claims are false as the harmful Gerber Baby Food Products contain heavy metals not indicated on its labels or in Defendant's uniform marketing and advertising campaign. Rather, Gerber's Baby Food Products could be deleterious to infants and babies' health as they contain toxic heavy metals which have the propensity to cause adverse health implications, rendering these products unsuitable for consumer use as marketed by Defendant.

88.     While engaged in the conduct of business, trade, and commerce, Defendant did attempt to directly and/or indirectly induce consumers to purchase the harmful Brand Baby Food Products by its labeling and by material omissions. In doing so, Defendant utilized false and misleading labeling which did not represent the true nature and quality of its Baby Food Products, but rather misled consumers into believing that these products were safe and healthy and did not contain toxic heavy metals. The false labeling and material omissions were materially misleading and materially deceiving to reasonable consumers at large acting reasonably under the circumstances.

89.     Defendant's efforts to conceal and downplay its Baby Food Products' inclusion of material quantities and levels of heavy metals constituted a harmful consumer fraud and deception upon unwitting and unknowledgeable consumers.

90.     Defendant's conduct caused and continues to cause injury to consumers, including Plaintiff and the New York Class members, in that they were misled to believe that they were purchasing Gerber's Baby Food Products that were safe and gentle, and did not contain arsenic, lead, cadmium and/or mercury in levels which could cause concern or had the propensity to cause adverse health implications.

91.     In making material omissions regarding the presence of toxic and/or dangerous heavy metals contained in these Products, Defendant knew, or should have known, that its practices were materially deceptive and misleading in violation of N.Y. Gen. Bus. Law § 350, *et seq*.

92.     Plaintiff and the New York Class members based their decision to purchase Gerber's Baby Food Products in substantial part on Defendant's false labeling, advertisements,

material representations and omitted facts. The revenue to Defendant attributable to the sale of its Baby Food Products likely amount to millions of dollars.

93.    Based on all of the foregoing, Defendant has violated New York General Business Law § 350, causing Plaintiff and the New York Class members to sustain injury in fact – the loss of monies paid for Gerber's Baby Food Products.

94.    The misrepresentations and non-disclosures by Defendant of the material facts described and detailed herein constitute false and misleading advertising and, therefore, constitute violations of N.Y. Gen. Bus. Law § 350, *et seq.*

95.    Plaintiff seeks an order enjoining Defendant from continuing this false advertising. Absent enjoining this false advertising, Defendant will continue to mislead Plaintiff and the New York Class members and, in doing so, irreparably harm each of the New York Class members.

96.    As a direct and proximate result of Defendant's violation of New York General Business Law § 350, Plaintiff and the New York Class members have also suffered an ascertainable loss of monies. By reason of the foregoing, Plaintiff and the New York Class Members also seek actual damages or statutory damages of $500 per violation, whichever is greater, as well as punitive damages. N.Y. Gen. Bus. Law § 350-e(3).

## COUNT 4
## BREACH OF EXPRESS WARRANTY
### *(On Behalf of the New Jersey and New York, Sub-Classes)*

97.    The New Jersey and New York, Plaintiffs identified above, individually and on behalf of the members of their putative subclasses, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

98.    Plaintiffs bring this claim on behalf of themselves and their respective State Sub-Classes.

99.     Express warranties by sellers of consumer goods are created when an affirmation of fact or promise is made by the seller to the buyer, which relates to the goods and becomes the basis of the bargain. Such warranties can also be created based upon descriptions of the goods which are made as part of the basis of the bargain that the goods shall conform to the description. *See, e.g.*, N.J. Stat. Ann. § 12A:2A-210(1)(a)-(b); and N.Y. U.C.C. Law § 2-313(1)(a)-(b).

100.    Each of the Plaintiffs formed a contract with one or more of the Defendants at the time they purchased the Gerber Baby Food Products. The terms of that contract included the promises and affirmations of fact that Defendant made through its product labels, through other forms of uniform, nationwide marketing, on its respective websites, and social media.  Among other affirmations of fact and promises described herein, Defendant represented that its Baby Food Products were and are safe, healthy, and appropriate for infant or child consumption.

101.    These affirmations of facts and promises, which are part of Defendants' uniform marketing, advertising, and product labeling, constitute express warranties and became part of the basis of the bargain, and they are part of the standardized contracts between Plaintiffs and members of their putative classes on the one hand, and the Defendants, on the other.

102.    Contrary to these affirmations of fact and promises, Gerber's  Baby Food Products did not and do not contain food or beverages that are safe, healthy, and appropriate for infant or child consumption as described on the Product labels or in Defendant's uniform marketing and advertising campaign. Defendant breached the express warranties and/or contract obligations by placing these Products into the stream of commerce and selling them to consumers, when they have dangerous and/or toxic levels of heavy metals, and can cause toxicity or adverse health implications, rendering these products unfit for their intended use and purpose, and unsafe and

unsuitable for consumer use as marketed by Defendant. These high levels of heavy metals substantially impair the use, value, and safety of Gerber's Baby Food Products.

103.    At all times relevant herein, Defendant was aware, or should have been aware, of the toxic or dangerous levels of heavy metals in its Baby Food Products. Defendant was on notice of these concerns with its Products, but nowhere on the package labeling or on Defendant's website or other marketing materials did Defendant warn Plaintiffs and members of the putative classes that they were at risk of feeding their children food and/or beverages with toxic or dangerous levels of heavy metals.

104.    Instead, Defendant concealed the high levels of heavy metals contained in Gerber's Baby Food Products and deceptively represented that these products were safe, healthy, and appropriate for infant or child consumption. Defendant, thus, utterly failed to ensure that the material representations it was making to consumers were true.

105.    The toxic and/or dangerous levels of heavy metals at issue in Gerber's Baby Food Products existed when they left Defendant's possession or control and were sold to Plaintiffs and members of the putative classes. The levels of heavy metals contained in the Defendant's Products were undiscoverable by Plaintiffs and members of the putative classes at the time of purchase of Gerber's Baby Food Products.

106.    As manufacturer, marketer, advertiser, distributor and seller of the Gerber Brand Baby Food Products, Defendant was the party with exclusive knowledge and notice of the fact that these Products did not conform to the affirmations of fact and promises, and constituted credence goods.

107.    In addition, or in the alternative, to the formation of an express contract, Defendant made each of the above-described representations to induce Plaintiffs and members of the putative classes to rely on such representations.

108.    Defendant's affirmations of fact and promises were material, and Plaintiffs and members of the putative classes reasonably relied upon such representations in purchasing the Defendant's Products.

109.    All conditions precedent to Defendant's liability for its breach of express warranty have been performed by Plaintiffs or members of the putative classes.

110.    Affording Defendant an opportunity to cure its breaches of written warranties would be unnecessary and futile here. Defendant was placed on reasonable notice of the levels of heavy metals in Gerber's Baby Food Products and breach of the warranties based scientific research and expertise in the food production industry. Defendant has had ample opportunity to cure the high level of heavy metal in its Baby Food Products for safe and healthy consumption by Plaintiffs and members of the putative classes and their children, but has failed to do so.

111.    Defendant has also had notice of its breach as set forth herein by virtue of the recent Congressional investigation into this matter and the prior 2019 report issued by Healthy Baby Bright Future.

112.    As a direct and proximate result of Defendant's breaches of express warranty, Plaintiffs and members of the putative classes have been damaged because they did not receive the Baby Food Products as specifically warranted by Defendant. Plaintiffs and members of the putative classes did not receive the benefit of the bargain and suffered damages at the point of sale stemming from their overpayment of Gerber's Baby Food Products.

## COUNT 5
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

*(On Behalf of the New Jersey and New York, Sub-Classes)*

113.    The New Jersey and New York, Plaintiffs identified above, individually and on behalf of the members of their putative subclasses, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

114.    Plaintiffs bring this claim on behalf of themselves and their respective State Sub-Classes.

115.    Each of the states represented by Plaintiffs has adopted UCC § 2-314, which states that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." *See e.g.* N.J. Stat. Ann. § 12A:2-314 (New Jersey), N.Y. U.C.C. § 2-314 (New York).

116.    Defendant is and was at all relevant times a merchant as defined by the relevant State statutes.

117.    The Gerber's Baby Food Products sold to Plaintiffs and members of the Class are goods as defined by the relevant statutes.

118.    Defendant sold, and Plaintiffs and members of the putative classes purchased, the Defendant's Products from authorized resellers of Defendant's products.

119.    By placing the Products into the stream of commerce, Defendant impliedly warranted to Plaintiffs and members of the putative classes that Gerber's Baby Food Products were of merchantable quality (i.e., a product of a high enough quality to make it fit for sale, usable for the purpose it was made, of average worth in the marketplace, or not contaminated or flawed or containing a defect affecting the safety of the product), would pass without objection in the trade or business, and were free from material defects, and reasonably fit for the use for which they were intended.

120.    Gerber's Baby Food Products when sold and at all times thereafter were not merchantable or reasonably fit for either the use they were intended or the uses reasonably foreseeable by Defendant.

121.    Defendant breached the implied warranty of merchantability because its Baby Food Products suffer from the presence of toxic and/or dangerous heavy metals, such as arsenic, lead, cadmium and mercury, that have the propensity to cause health complications, rendering them unfit for their intended use and purpose as baby and/or children food and beverages. The level of heavy metals substantially impairs the use, value, and safety of these products.

122.    The toxic and/or dangerous levels of heavy metals existed when the Defendant's Products left Defendant's possession or control and were sold to Plaintiffs and members of the putative classes. The amounts of heavy metals contained in the Products were undiscoverable by Plaintiffs and members of the putative classes at the time of their purchase of the Products.

123.    As described herein, Defendant repeatedly advertised, both on the labels for its Baby Food Products labels and on their respective websites, through a national advertising campaign, among other items, that the Defendant's Products were and are safe and appropriate for infant and child consumption.

124.    Contrary to these representations, Gerber's Baby Food Products possessed quantities, levels and the presence of toxic heavy metals which were not revealed on Gerber's Baby Food Products labels and in Defendant's uniform marketing and advertising campaigns. Rather, the Defendant's Products are unsafe because they have toxic and/or dangerous levels of heavy metals contained in the Products' food or beverages with the propensity to cause adverse health implications. The Products are thus unsafe and unsuitable for consumer use as marketed by Defendant.

25

125.    Defendant has exclusive knowledge of material facts concerning the defective nature of Gerber's Baby Food Products, including that they had the propensity to cause, and had caused these adverse reactions.

126.    Plaintiffs and members of the putative classes, at all relevant times, were intended third-party beneficiaries of Defendant and its agents in the distribution and sale of the Gerber Baby Food Products. Moreover, Defendant exercised substantial control over which outlets can carry and sell Gerber's Baby Food Products, which are the same places that Plaintiffs and members of the putative classes purchased them. In addition, Defendant's warranties are in no way designed to apply to the distributors that purchase these products in bulk and then sell them on an individual basis to each consumer. Individual consumers are the ones who ultimately review the labels prior to making their purchasing decisions. As a result, these warranties are specifically designed to benefit the individual consumers who purchase Gerber's Baby Food Products.

127.    Plaintiffs and members of the Class sustained damages as a direct and proximate result of Defendant's breaches in that they paid a premium for Gerber's Baby Food Products that they would not have otherwise paid. Plaintiffs and members of the putative classes also did not receive the value of the product they paid for—the Products are worthless or worth far less than Defendant represented due to the presence of toxic heavy metals contained therein which had the propensity to cause, and could lead to adverse health implications.

128.    Plaintiffs and members of the Class have sustained, are sustaining, and will sustain damages if Defendant continues to engage in such deceptive, unfair, and unreasonable practices.

129.    Defendant was placed on reasonable notice of the high levels of heavy metals contained in Gerber's Baby Food Products and breach of the warranties based on their own research into food processing and sourcing, as well as a recent Congressional investigation on the

matter, and have had ample opportunity to cure the inappropriate levels of metals for Plaintiffs

and members of the putative classes, but have failed to do so. Instead, Defendant has doubled

down on its efforts to convince consumers that its Products are safe to consume and healthy for

infants and babies, including public statements denying that there are any issues with the

Products.

130.    As a result of the breach of the implied warranty of merchantability, Plaintiffs and

members of the putative classes are entitled to legal and equitable relief including damages, costs,

attorneys' fees, rescission, and other relief as deemed appropriate, for an amount to compensate

them for not receiving the benefit of their bargain.

**COUNT 6**
**UNJUST ENRICHMENT**
**(On Behalf of the Classes)**

131.    Plaintiffs incorporate by reference all of the foregoing paragraphs of this Complaint

as if fully stated herein.

132.    Plaintiffs brings this claim against Defendant on behalf of themselves and the

putative classes.

133.    Plaintiffs and the other members of the putative classes conferred benefits on

Defendant by purchasing Gerber's Baby Food Products.

134.    Defendant received the benefits to the detriment of Plaintiffs and the other members

of the putative classes because Plaintiffs and the other members of the putative classes purchased

a mislabeled product that is not what they bargained for and did not provide the advertised benefit.

135.    Defendant has been unjustly enriched in retaining the revenues derived from the

purchases of Gerber's Baby Food Products by Plaintiffs and the other members of the putative

classes. Retention of those monies under these circumstances is unjust and inequitable because

Defendant's labeling of the Products was misleading to consumers, which caused injuries to

Plaintiffs and the other members of the putative classes, because they would have not purchased Gerber's Baby Food Products had they known that they contained dangerous levels of heavy metals.

136.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and the other members of the putative classes is unjust and inequitable, Defendant must pay restitution to Plaintiffs and the other members of the putative classes for their unjust enrichment, as ordered by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other members of the putative classes proposed in this Complaint, respectfully requests that the Court enter judgment as follows:

A.    Declaring that this action is a proper class action, certifying the putative classes as requested herein, designating Plaintiffs as Class Representatives, and appointing the undersigned counsel as Class Counsel for the putative classes;

B.    Ordering Defendant to pay actual damages to Plaintiffs and the other members of the Class and Sub classes;

C.    Ordering Defendant to pay restitution to Plaintiffs and the other members of the Class and Sub classes;

D.    Ordering Defendant to pay punitive damages, as allowable by law, to Plaintiffs and the other members of the Class and Sub classes;

E.    Ordering Defendant to pay statutory damages, as provided by the applicable state consumer protection statutes invoked herein, to Plaintiffs and the other members of the Class and Sub classes;

F.  Ordering Defendant to pay reasonable attorneys' fees and litigation costs to Plaintiffs and the other members of the Class and Sub classes, as allowable by law;

G.  Ordering Defendant to pay both pre- and post-judgment interest, as allowable by law, on any amounts awarded; and

H.  Ordering such other and further relief as may be just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury of all claims in this Complaint so triable. Plaintiffs also respectfully requests leave to amend this Complaint to conform to the evidence, if such amendment is needed for trial.

Dated:  April 21, 2021

Respectfully submitted,

/s/

Gary S. Graifman
KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.
135 Chestnut Ridge Road, Suite 200
Montvale, New Jersey 07645
T: 201-391-7000
F: 201-308-845-356-4335
ggraifman@kgglaw.com

Melissa R. Emert*
KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.
747 Chestnut Ridge Road, Suite 200
Chestnut Ridge, New York 10977
T: 845-356-2570
F: 845-356-4335
memert@kgglaw.com

*pro hac vice to be filed*

*Attorneys for the Plaintiffs and the Putative Classes*